# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### Houston Division
www.txs.uscourts.gov

James 'Joe' Ross *d/b/a* "DJ Joe Ross,"

      *Plaintiff,*

-*v*-

Christopher A. Prado

      &

The United States of America,

      *Defendants.*

_____/

CIVIL ACTION

No. _____

## COMPLAINT

Plaintiff James 'Joe' Ross *d/b/a* "DJ Joe Ross" files this Complaint against Defendants Christopher A. Prado and the United States of America.  Plaintiff presents the following:

1.      Plaintiff is an individual residing at 406 West Clay Street, Houston, Texas 77019.

2.      Defendant Christopher A. Prado is an individual residing at 2016 Main Street, Apartment 2301, Houston, Texas 77002.

3.      The United States of America is named for the United States Patent & Trademark Office and Lauren D. Shinn, an employee of the United States Patent & Trademark Office (T/LO128) (LAW OFFICE 128) (571-270-5230), who was acting within the scope of her employment at all relevant times.

JURISDICTION & VENUE

4.      Original jurisdiction is pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1338(a), and

5 U.S.C. § 702 or, in the alternative, 15 U.S.C. § 1071.   This Court may accordingly exercise

supplemental jurisdiction as to Counts IV - VII pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper under 28 U.S.C. §§ 1391(b) as well as 5 U.S.C. § 703 or, in the

alternative, 15 U.S.C. § 1071.

FACTUAL BACKGROUND

6.      On April 28, 2020, Defendant Christopher A. Prado filed an application with the

United States Patent & Trademark Office (hereafter, the "USPTO") seeking to register the mark

"DJ JOE ROSS" in his name.

7.      On July 28, 2020, after internet search engines began to show the subject mark as

being 'owned' by Defendant Prado, he sent the following email to Plaintiff:



Email from Def. Prado to Pl. (July 28, 2020, 17:56 CDT) (on file with Pl.).  Defendant Prado

acknowledged that "DJ JOE ROSS" is actually the Plaintiff's mark, *see id.*, but the mark is now

registered with the following notation on paragraph six (6) of the certificate:

> "DJ JOE ROSS" is the stage name of Chris A Prado, who is a living individual whose consent is of record.
>
> SER. NO. 88-890,377, FILED P.R. 04-28-2020; AM. S.R. 04-28-2020

U.S. Trademark Reg. No. 6,550,102 (Ser. No. 88-890,377, Filed P.R. 04-28-2020; AM. S.R.

04-28-2020) (Nov. 9, 2021).   Correction of paragraph six (6) of the registration certificate is

needed because "DJ JOE ROSS" is the Plaintiff's stage name and has been so since 2003.

8.     Defendant Prado admitted explicit intent to deceive the USPTO during

procurement of the "DJ JOE ROSS" trademark registration:

> As you all know we are still waiting on the decision from the discussed Federal agency before the REAL fun begins - so **normally the website will be "clean" during the week and events updated for our subscribers on Friday evenings and removed on Sunday evenings.   This is in case the agency investigator tries to to an online search - we don't want to bias their decision :).**  Also another website is currently in Beta testing this week and will too replace the site that is currently active.
>
> Once the federal agency provides a decision as to their course of action we will be free to proceed without ANY restraints on the new website (based in Belarus) without concern of the content being taken down or revealing of the site owners . . . stay tuned! JR's "career" may very well be over very shortly lol. And his downward spiral into poverty accelerated. <cheers emoji> <cry laughing emoji>.

Email from Def. Prado to Pl. (July 15, 2020, 23:53 CDT) (excerpt) (on file with Pl.) (bold

emphasis added).   The "agency investigator" that Defendant Prado admitted explicit intent to

deceive is USPTO Examining Attorney Lauren D. Shinn. *Compare id. to* Application Ser. No. 88-890,377, Filed P.R. 04-28-2020; AM. S.R. 04-28-2020.

COUNT I:
DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
AS TO DEFENDANTS PRADO & UNITED STATES

9.      Plaintiff restates and incorporates by reference the foregoing.   Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

10.      Plaintiff asks this Court to declare that correction of U.S. Trademark Reg. No. 6,550,102 (Ser. No. 88-890,377, Filed P.R. 04-28-2020; AM. S.R. 04-28-2020) (Nov. 9, 2021) is needed, specifically correction of paragraph six (6) of the registration certificate from:

"DJ JOE ROSS" is the stage name of Chris A Prado, who is a living individual whose consent is of record.

to

"DJ JOE ROSS" is the stage name of James 'Joe' Ross, who is a living individual whose consent is of record.

with no other changes to the registration.

COUNT II:
DAMAGES FOR FRAUDULENT PROCUREMENT OF A FEDERAL TRADEMARK REGISTRATION
PURSUANT TO 15 U.S.C. § 1120 AS TO DEFENDANT PRADO

11.      Plaintiff restates and incorporates by reference the foregoing.   Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

12.      Plaintiff asks this Court to hold Defendant Prado liable for damages that Plaintiff has sustained in consequence of Defendant Prado's fraudulent trademark registration procurement.  Plaintiff has incurred attorney's fees and has incurred (and continues to incur) lost

time and energy that should be spent on gainful activity (rather than litigating with someone who pretended to be the Plaintiff in an attempt to create confusion surrounding the Plaintiff's mark and "ruin Plaintiff's career"). Defendant Prado made repeated statements in 2020 and 2021 delighting in the cost that his fraudulent trademark procurement would heap upon the Plaintiff. *E.g.*, Email from Def. Prado to Pl. (July 28, 2020, 17:56 CDT), ¶ 7, *supra*. Some of these statements referred explicitly to Defendant Prado's desire to heap legal fees upon the Plaintiff — for example, shortly after Defendant Prado signed his fraudulent April 28, 2020 USPTO application, and before Plaintiff knew what was occurring, Defendant Prado stated:

> Have you hired a lawyer yet? The reason for legal representation will soon make itself known. Maybe you can get an attorney in "exchange for services rendered" lol.

Email from Def. Prado to Pl. (May 4, 2020, 18:17 CDT) (excerpt) (on file with Pl.) (referring to the financial strain that the fraudulent trademark application would place on the Plaintiff).

13. In that same May 4, 2020 email, Defendant Prado (in the context of his July 15, 2020 and July 28, 2020 emails in ¶¶ 7-8, *supra*), made his first admission of explicit intent to deceive the USPTO:

> Its time to move past social media/online playtime - we're bored. Your new website is on pause while law enforcement investigates documents submitted to them. We don't want any internet search distracting them from our objectives. Rest assured your site will be active again once we determine the course of events.

Email from Def. Prado to Pl. (May 4, 2020, 18:17 CDT) (excerpt) (on file with Pl.) (referring to one of the faux internet sites that Defendant Prado created in order to sow confusion regarding "DJ JOE ROSS" and using the term "law enforcement" to refer to USPTO examiners); *see also* Email from Def. Prado to Pl. (July 15, 2020, 23:53 CDT), ¶ 8 *supra*, (referring to same facts and

intent to deceive the USPTO but using the term "agency investigator" rather than "law enforcement").[1]

14.     The explicit and admitted intent driving Defendant Prado's conduct was not only to cause confusion surrounding "DJ JOE ROSS" — but to damage Plaintiff by causing him to incur attorney's fees:

> We will be taking control of your social media accounts in the coming weeks . . . [this] . . . is going to be VERY expensive for you.  I think at this point you should talk to a lawyer - because this is NOT going to be good news.

Email from Def. Prado to Pl. (May 2, 2020, 22:05 CDT) (excerpt) (on file with Pl.); *see also* Email from Def. Prado to Pl. (July 15, 2020, 23:53 CDT), ¶ 8 *supra* ("Once the federal agency provides a decision as to their course of action we will be free to proceed without ANY restraints . . . stay tuned! JR's "career" may very well be over very shortly lol. And his downward spiral into poverty accelerated. <cheers emoji> <cry laughing emoji>").

15.     Plaintiff requests $4,252.50, $1,977.50, $805.00, and $7,430.00 for September, October, November, and December 2021 attorney fee invoices plus $6,580.00 for January 2022 to date.  Plaintiff also seeks $5,000.00 for fifty hours of his own time spent on this ordeal over the past two years.  Plaintiff is normally paid $100/hr. by established, in-town, repeat venues for

---

[1] Defendant Prado frequently used the term "law enforcement" interchangeably with other terms to refer to the USPTO:

> The government moves ridiculously slowly and we are STILL waiting to find out the status of 2 "items of interest" in their possession - depending upon their decision will determine the JCs next steps.  Patience is not our strong point but we have been advised to let the legal course play out first, then street justice can be activated.  Its tough - we want to see your blood on the sidewalk. Fear in your eyes.  Hear you cry in pain.  But should law enforcement come thru with our case the wait will be worth it - TOTAL destruction of your personal and work life.

Email from Def. Prado to Pl. (May 28, 2020, 20:44 CDT) (excerpt) (on file with Pl.).

live DJ performances, and is paid $1,200 to $1,500 for five-hour blocks at special events (such that the requested rate for his lost time and energy dealing with Defendant Prado's fraud is reasonable).

16.     Further, Plaintiff seeks an additional $104,180.00 (4X multiplier) in punitive damages due to Defendant Prado's recidivism[2] and the egregiousness/aggravatedness of the complained-of conduct.  Plaintiff will also seek reimbursement under FED. R. CIV. P. 54 for the cost of prosecuting this action.

17.     There is no "bright line" multiplier rule for punitive damages awards. *Compare TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993) (affirming punitive award of $10 million on top of compensatory/actual damages award of $19,000) *with Philip Morris USA v. Williams*, 549 U.S. 346 (2007) (citing cases after *TXO* giving increasing scrutiny to more-than-single-digit multipliers).  Nevertheless, there is a general view that a 4X multiplier

---

[2] Plaintiff will prove that Defendant Prado had multiple opportunities from July 30, 2020 onward to alter course and avoid this civil action (notwithstanding his initial fraudulent trademark registration application signed under penalty of perjury).  Rather than acknowledge error, however, Defendant Prado persevered — making multiple statements evincing a perceived right to break the law and harm others.  Defendant Prado's repeated and persistent conduct throughout his fraudulent trademark application is consistent with his thirty-year criminal history — starting with a conviction for credit card fraud in 1991 and continuing through theft/embezzlement from charitable organizations, physical violence and forced prostitution, and repeated statements by Defendant Prado that his fraudulent trademark procurement in violation of Titles 15 & 18 would continue *expressly due to a perceived lack of effective recourse*. That Defendant Prado is a recidivist is relevant in the punitive damages analysis:

> Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance[.]

*State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 424-25 (2003) (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 577 (1996)); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 357 (2007):

> . . . in determining reprehensibility.  *Cf., e.g., Witte v. United States*, 515 U. S. 389, 400 (1995) (recidivism statutes taking into account a . . . defendant's other misconduct do not impose an " 'additional penalty for the earlier crimes,' but instead … 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one' " (quoting *Gryger v. Burke*, 334 U. S. 728, 732 (1948))).

*Philip Morris*, 549 U.S. at 357 (applying reasoning re criminal defendants to civil fact-finding and damages determinations).

for egregious conduct (absent other factors like a particularly wealthy defendant or difficult-to-

determine actual damages) is appropriate:

> Turning to the second *Gore* guidepost, we have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award. 517 U. S., at 582 ("[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive [425] award"); *TXO*, *supra*, at 458. We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *Has lip*, in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U. S., at 23-24. We cited that 4-to-1 ratio again in *Gore*. 517 U. S., at 581. The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish. *Id.*, at 581, and n. 33. While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, *id.*, at 582, or, in this case, of 145 to 1.

> Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages." *Ibid.*; *see also ibid.* (positing that a higher ratio might be necessary where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine"). The converse is also true, however. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

*State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 424-25 (2003) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)).   Defendant Prado's conduct over the past two years has been reprehensible, malicious, and merits damages beyond those required to simply compensate the Plaintiff for actual damages provable with receipts, etc.:

> We recognized in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U. S. 424 (2001), that in our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes. *Id.*, at 432. Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Ibid.* (citing Restatement (Second) of Torts § 903, pp. 453-454 (1979)). By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution.

*State Farm*, 538 U.S. at 416.   Defendant Prado's conduct these past two years is precisely the kind of conduct which punitive damages are designed to deter and retribute. *See id.* at 416; *see also id.* at 419:

> "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U. S., at 575. We have instructed courts to determine the reprehensibility of a defendant by considering whether . . . the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.*, at 576-577 . . . [P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *Id.*, at 575.

*State Farm*, 538 U.S. at 419 (2003).   Plaintiff asks for $130,225.00 in total damages on Count II to compensate, to punish, and to deter.

<u>COUNT III:</u>
<u>PERMANENT INJUNCTION PURSUANT TO 15 U.S.C. § 1116</u>
<u>AS TO DEFENDANT PRADO</u>

18.     Plaintiff restates and incorporates by reference the foregoing.   Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

19.     Following a seventeen-month course of persistent fraudulent trademark activity, Defendant Prado then executed an assignment of the subject registration to Plaintiff in order to avoid a 180-day jail term.[3]  That assignment now places the Plaintiff in the shoes of the registrant — entitling the Plaintiff to injunctive relief against Defendant Prado under 15 U.S.C. § 1116(a):

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of . . . a permanent injunction . . . Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the

---

[3] As detailed in the other counts of this Complaint, *infra*, Plaintiff's primary concern during the course of Defendant Prado's fraudulent trademark procurement was Plaintiff's physical safety.   The Harris County District Attorney's Office worked on the matter from Summer 2020 through Spring 2021 to obtain a state court protective order on April 22, 2021 (prohibiting Defendant Prado from being near firearms or the Plaintiff).   Less than two weeks after entry of that protective order, Defendant Prado then spoke with USPTO Examining Attorney Lauren Shinn on May 4, 2021, and entered into an agreement under which she would amend his deficient application for him. Defendant Prado's apparent thinking was that having Ms. Shinn amend the application for him would avoid a subsequent state court finding of harassment in violation of the protective order.   Defendant Prado's May 4, 2021 agreement with Ms. Shinn (along with additional behavior after entry of the protective order) nevertheless resulted in a finding of contempt/harassment and a six-month suspended term of confinement in the Harris County Jail.

United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

15 U.S.C. § 1116(a). Plaintiff asks that Defendant Prado be permanently enjoined from using the mark "DJ JOE ROSS" (or any confusingly similar mark) in violation of Titles 15 and 18, and that Defendant Prado be required to file a § 1116(a) report under oath setting forth in detail: (i) the identities of the members of "The JC" (short for "The Justice Council" — a group that has been helping Defendant Prado carry out his malicious "DJ JOE ROSS" activity), *see* n.1, *supra*, as well as: (ii) the steps that Defendant Prado has or will have taken by the time of the § 1116(a) report to put an end to the group's malicious activities concerning the Plaintiff's mark. Statements/admissions by Defendant Prado show that he and his co-conspirators not only used Plaintiff's mark and likeness, but sought to sow confusion concerning the mark by pursuing multiple avenues.[4]

_____

[4] *Compare, e.g.*:

> I guess you missed the trademark filing with the Texas Secretary of State? 

Text from Def. Prado to Counsel for Pl. (Aug. 10, 2021, 16:25 CDT) (on file with Counsel for Pl.) *to*:

> I'm unclear as to your continued statements that I attempted to register the mark with the TxSOS - this is 100% incorrect.

Email from Def. Prado to Counsel for Pl. (October 18, 2021, 07:41 AM CDT) (excerpt) (on file with Counsel for Pl.) *and*:

> The government moves ridiculously slowly and we are STILL waiting to find out the status of 2 "items of interest" in their possession - depending upon their decision will determine the JCs next steps . . .

Email from Def. Prado to Pl. (May 28, 2020, 20:44 CDT) (excerpt) (on file with Pl.) (using the abbreviation "JC" for the "Justice Council" group seeking to harm Plaintiff). Defendant Prado and the "Justice Council" also used the mark *to solicit prostitution business online* in an apparently two-pronged attempt to damage the Plaintiff's mark and make money using the Plaintiff's mark.

<u>COUNT IV:</u>
<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

20.     Plaintiff restates and incorporates by reference the foregoing.   Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

21.     In addition to Defendant Prado's fraudulent federal trademark registration activity, he engaged in other malicious activity:

> Are you home?  Are your doors locked?  We're sitting out front of your sh—hole - it's 12:45 a.m. - maybe we should walk up your driveway?  Make sure you're a good boy and remember to LOCK both doors and your windows? But wait, did you ever change your locks because your friend you let hang out when you are out of town - he gave us a key…. We haven't tried it yet, wonder if it still works.  Justice is dressed in Black and Justice comes at Night.  No one will hear you scream JR.

Email from Def. Prado to Pl. (July 7, 2020, 00:47 CDT) (excerpt) (on file with Pl.) (obscenity redacted).   Defendant Prado's malicious conduct was persistent to the point that the Harris County District Attorney had to obtain a protective order on April 22, 2021 prohibiting Defendant Prado from coming within 200 ft. of the Plaintiff's residence.

22.     Defendant Prado also posted online advertisements using the Plaintiff's name, mark, and likeness, and *actually arranged paid prostitution encounters* while impersonating the Plaintiff online in an attempt to sully the Plaintiff's mark and cause emotional distress:

> You really should t [sic] schedule your ProsTiTuTe appointments on Rentmen.com and then NOT show up <surprise face emoji>. There are a few VERY irate "clients" who don't like being stood up.   The best solution is for you to do "In Calls" from now on <devil face smile emoji>.   Your address will now be used to schedule your "In Calls" - your available 24/7 right?

Email from Def. Prado to Pl. (June 3, 2020, 11:12 AM CDT) (excerpt) (on file with Pl.).

These efforts were nationwide in cities where the Plaintiff performs at special events:

> . . . FACE pictures are on some VERY questionable sex hookup sites in Chicago, Denver, Orlando, New York, and D.C. . . . sounds like a very "interesting" summer is coming up . . .

Email from Def. Prado to Pl. (May 13, 2020, 18:07 CDT) (excerpt) (on file with Pl.).

The activity was explicitly and admittedly intended to harm the Plaintiff personally and cause

him emotional distress:

> . . . we're back and ready to start the Summer "entertainment". Some members of the JC prefer to get straight to bloody vindictive violence that you deserve while others prefer to destroy your reputation and relationship with your family FIRST, then hurt you.
>
> …
>
> . . . you will wish that Cancer had ended your miserable existence years ago.   I'm sure your dad was disappointed you survived Cancer . . . We'll look for you at Rebar this weekend..,but don't worry - u are safe inside of establishments.   It's just all those dangerous things that can happen going to and from that are concerning . . .

Email from Def. Prado to Pl. (May 27, 2020, 11:35 AM CDT) (excerpt) (on file with Pl.); *see also* Email from Def. Prado to Pl. (July 15, 2020, 23:53 CDT), ¶ 8 *supra* (evincing malicious intent to cause emotional distress).   Defendant Prado stalked and harassed the Plaintiff while at work:

> On Saturday night at Rebar check out your favorite hookup apps lol..The JC has word that your pics will be on several "interesting" profiles while the JC is there at the club.   Will you be able to tell who it is??   We can't wait to see the look on the other queens faces as they start gossiping about your "new" profiles while you are at work.

Email from Def. Prado to Pl. (May 28, 2020, 23:56 CDT) (excerpt) (on file with Pl.) (referring to Defendant Prado's co-conspirators as "The JC" — short for "The Justice Council");

> You ready for fun tonight at Rebar?  Your profiles have been set up on 4 of your FAVORITE gay hookup apps so no one will be surprised to see you online.  Very interesting profile txt though lol - so if your wondering why people are pointing at you and looking at you   and laughing tonight while your "working" (that term is a HUGE stretch by the way for the talentless tasks you call work) - you can thank the Justice Council :).  This will be a weekly Sat night event all summer until you know…The Final Event. :)….

Email from Def. Prado to Pl. (May 30, 2020, 11:53 AM CDT) (excerpt) (on file with Pl.) (alluding to a future physical assault upon Plaintiff following the planned course of harassment).

23.     Plaintiff will prove that: (i) Defendant Prado acted intentionally; (ii) in a manner that was extreme and outrageous; (iii) causing Plaintiff emotional distress; and (iv) the emotional distress was severe. *See Hoffmann--La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  While "a claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct[,]" *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999), Defendant Prado *intended* to inflict emotional distress:

> DO. YOU. OWN. A. GUN.?
> WHO. SHOT. JR.? - one of the most popular lines from TV.  Think that question is going to be asked in Montrose anytime soon?
>
> Came by again last night - 3 of us were missing the sound of breaking glass.  Decided to take a walk around your building, stood right outside your bedroom window - could you sense we were there?  Are you sure you can sleep at night?  Because your shithole apartment isn't secure enough to keep a 4 yr old from walking right in.  Not sure how anyone would be able to sleep there knowing that the "collections team" has taken an interest in them.

> So, random question - asking for a friend:
>
> Given a choice, which would you prefer to see happen to "someone":
>
> - victim doused with a flammable liquid and then being set alight to burn in agony and pain.  The screams that once you hear no one will ever be able to forget.
>
> - victim made to kneel in front of the executioner, throat is slit, and victim is laughed at while HE dies in a pool of his own warm blood?
>
> - victim is quickly and randomly approached in the parking spot behind his duplex while getting into a piece of shit jeep - lic CRG-6115 or maybe while driving and is shot in the head at a stoplight.  Quick, random, no witnesses.
>
> Houston is a VERY dangerous city and there are a LOT of opportunities for bad things to happen to good people . . .

Email from Def. Prado to Pl. (May 5, 2020, 10:38 AM CDT) (excerpt) (on file with Pl.);

> . . . You can't avoid me forever.  You can move but I'll find you.  Phychos ALWAYS get their prey JR <devil smile emoji>.  I am closer than you think . . .

Email from Def. Prado to Pl. (July 5, 2020, 22:35 CDT) (excerpt) (on file with Pl.).  Defendant Prado's conduct satisfies the "extreme and outrageous" prong because the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffmann--La Roche*, 144 S.W.3d at 445 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt 46 cmt. d (1965)).

24.     Plaintiff paid $500.00 for a new security system and spent at least fifty hours[5] of his time with the Houston Police, Harris County DA's Office, speaking to attorneys, and otherwise being forced to waste time on this ordeal.    Plaintiff requests $5,500.00 in compensatory damages on this count (but does not seek duplicative recovery on $5,000.00 of that if his lost time is compensated under Count II).  Plaintiff also seeks an additional $11,000.00 (limited to $1,000 if lost time is compensated under Count II) in additional damages (2X multiplier) to deter, etc. *see, e.g., State Farm*, 538 U.S. at 419.  Further, and only to the extent not duplicative of recovery on Count II, Plaintiff seeks recovery of the attorney fee invoices specified in ¶ 15, *supra*, because it has been Defendant Prado's explicit and admitted intent to heap distress upon the Plaintiff, with attorney fee bills part and parcel of that distress, and Defendant Prado has maliciously intended to increase Plaintiff's attorney fee bills in order to cause distress. *E.g.*, Email from Def. Prado to Pl. (May 2, 2020, 22:05 CDT) (excerpt) (on file with Pl.) (" . . . [this] . . . is going to be VERY expensive for you.  I think at this point you should talk to a lawyer - because this is NOT going to be good news").   In the event that attorney fee invoices are recovered under this Count IV instead of Count II, Plaintiff requests a 2X punitive damages multiplier (instead of 4X) due to the limitations of TEX. CIV. PRAC. AND REM. CODE § 41.008.

COUNT V:
MALICIOUS DAMAGE TO PERSONAL PROPERTY

25.     Plaintiff restates and incorporates by reference the foregoing.    Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

---

[5] *See* ¶ 15, *supra* (showing that Plaintiff is paid between $100 and $300 per hour when he is performing as a DJ such that Plaintiff's requested lost time rate in this Complaint is reasonable).

26.     During the course of his fraudulent federal trademark registration activity,

Defendant Prado broke Plaintiff's car window after having previously threatened to do so:

> Your brown piece of s—t Jeep was spotted in front of your ghetto
> this afternoon - too bad there were several people outside - they are
> the ONLY thing that stopped a window smashing party from taking
> place.  We'll be back tonight and this weekend . . .

Email from Def. Prado to Pl. (May 14, 2020, 17:47 CDT) (excerpt) (on file with Pl.) (obscenity

redacted).  He then later admitted to doing so:

> . . . have you checked your piece of s—t car?  In the middle of a
> crowd yet so vulnerable - no one even notice me lol.  We're at your
> s—t hole apartment right now - you always leave so many lights
> on??  Watching and waiting for the perfect opportunity to F—K
> YOU UP <devil smile emoji>

Email from Def. Prado to Pl. (Jan. 1, 2021, 01:08 AM CDT) (excerpt) (on file with Pl.)

(obscenities redacted).   A later email then reconfirmed the previous admission and Defendant

Prado threatened to repeat the conduct:

> . . . how sweet that you protect your s—t jeep lol.  I'd much rather
> bash your face in than smash your car windows anyways.  But I'll
> keep looking for opportunities to do both.   Noticed the fire/
> paramedics were on your street yesterday - someday soon they will
> be on your street because you will need them.  We have so much to
> look forward to James :)…and it all includes me kicking your ass,
> trashing your jeep, and doing other things to f—k with you . . .

Email from Def. Prado to Pl. (Mar. 7, 2021, 02:12 AM CDT) (excerpt) (on file with Pl.)

(obscenities redacted); *see also* Email from Def. Prado to Pl. (Jan. 29, 2021, 22:09 CDT) ("I'm

outside . . . thinking a nice key down the side and a blade in the sidewall of a tire . . . much

quieter than smashing your window . . . ") (excerpt) (on file with Pl.)

27.     Plaintiff spent $175.37 to replace the car window and lost two hours of his time

dealing with this.[6]    Plaintiff seeks $375.37 in compensatory damages plus $750.74 (2X

multiplier) on this count to deter, etc. *See, e.g., State Farm*, 538 U.S. at 419.

COUNT VI:
DEFAMATION

28.     Plaintiff restates and incorporates by reference the foregoing.    Plaintiff also

incorporates by reference the factual allegations in other counts, *infra*.

29.     In Texas, plaintiffs bringing defamation claims must prove that: (i) there was a

published statement; (ii) the statement was defamatory and concerning the plaintiff, and (iii) the

defendant acted with either actual malice – if the plaintiff was a public official or public figure –

or negligence – if the plaintiff was a private figure – regarding the truth of the statement.

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).    Defendant Prado's own

statements admit to publication, defamation of the Plaintiff, and actual malice:

> . . . Shall I be more "public" in putting your profiles out there, get
> "closer" to you by smashing more windows?  Go visit your parents
> again? . . .   When a psycho gets impatient VERY BAD THINGS
> CAN HAPPEN.   I'm starting to get impatient James.   If I get to
> impatient then I'll get really angry and I can promise you that I'll
> be MUCH more violent with you than otherwise.  You're running
> out of time . . .

Email from Def. Prado to Pl. (Apr. 5, 2021, 13:40 CDT) (excerpt) (on file with Pl.) (admitting to

a continuing course of conduct wherein Def. Prado would post fake "hookup app" profiles using

Plaintiff's name, mark, and likeness, pretend to be Plaintiff online, and impute sexual

misconduct)); *cf.* ¶ 22, *supra* (". . . FACE pictures are on some VERY questionable sex hookup

---

[6] *See* ¶ 15, *supra* (showing that Plaintiff is paid between $100 and $300 per hour when he is performing as a DJ such that Plaintiff's requested lost time rate in this Complaint is reasonable).

sites in Chicago, Denver, Orlando, New York, and D.C. . . . sounds like a very "interesting" summer is coming up . . ."). This continuous course of repeated conduct constitutes defamation *per se* under *Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011) (citing *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, *writ denied*). If this Court:

> . . . finds that the defendant made the allegedly defamatory statement[s] about the plaintiff, and the statement[s] [are] defamatory *per se*, then the factfinder may presume that the statement[s] injured the plaintiff's reputation. *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex.2002).

*Downing*, 348 S.W.3d at 424. The malicious statements described by Defendant Prado himself in ¶ 22, *supra*, continued well into 2021. Because Plaintiff is not required to prove existence or amount of damages on this count, Plaintiff requests general damages in the amount of $25,000.00.

30. In the alternative to general damages, Plaintiff can prove existence and amount of damages. Plaintiff can show that — although Defendant Prado's malicious attempts to harm by defamation did not result in any lost work or cancelled contracts (that the Plaintiff is aware of) — Plaintiff nevertheless spent at least fifty hours wasted on this ordeal by, *inter alia*, 'correcting the record' so that venues would know what was actually going on. Plaintiff is normally paid $100/hr. by established, in-town, repeat venues for live DJ performances, and is paid $1,200 to $1,500 for five-hour blocks at special events (such that a rate of $100/hr. for Plaintiff's lost time and energy dealing with Defendant Prado's conduct is reasonable). Plaintiff, in the alternative to general damages, seeks actual damages on this count of $5,000.00, with $20,000.00 (4X multiplier) in punitive damages for punishment and deterrence:

> "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U. S., at 575. We have instructed courts to determine the reprehensibility of a defendant by considering whether . . . the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.*, at 576-577 . . . punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *Id.*, at 575.

*State Farm*, 538 U.S. at 419.   Plaintiff uses a 4X punitive damages multiplier because the standard 2X limitation under TEX. CIV. PRAC. AND REM. CODE § 41.008 does not apply here. This is because Defendant Prado's course of defamation included a single defamatory *per quod* statement to USPTO Examining Attorney Lauren Shinn on May 4, 2021, which led her to execute the May 4, 2021 filing which amended "DJ JOE ROSS" to the Principal Register under Defendant Prado's name:

**EXAMINER'S AMENDMENT**

Issue date: **May 04, 2021**

**Application has been amended as shown below.**  As agreed to by Chris A Prado on May 4, 2021, the examining attorney has amended the application as shown below.  Please notify the examining attorney immediately of any objections.  TMEP §707.  Otherwise, no response is required.  *Id.*  In addition, applicant is advised that amendments to the goods and/or services are permitted only if they clarify or limit them; amendments that add to or broaden the scope of the goods and/or services are not permitted.  37 C.F.R. §2.71(a).

**Disclaimer statement.**
The following disclaimer statement is added to the record:

No claim is made to the exclusive right to use "DJ" apart from the mark as shown.

*See* 15 U.S.C. §1056(a); TMEP §§1213, 1213.03(c), 1213.08(a)(i).

**Name statement.**
The following statement is added to the record:

**"DJ JOE ROSS" is the stage name of Chris A Prado, who is a living individual whose consent is of record.**

TMEP §§813.01(a), 1206.04(b); *see* 37 C.F.R. §2.61(b).

**Register.**
The application is amended to the Principal Register.  *See* TMEP §§815.01.

Shinn, Lauren
/Lauren D. Shinn/
Trademark Examining Attorney
Law Office 128
(571) 270-5230
Lauren.Shinn@USPTO.gov

Examiner's Amendment, May 4, 2021, U.S. Trademark Reg. No. 6,550,102 (Ser. No. 88-890,377, Filed P.R. 04-28-2020; AM. S.R. 04-28-2020) (Nov. 9, 2021).   Defendant Prado thereby committed a felony under TEX. PENAL CODE § 32.46(a)(1) because the value of the "DJ JOE ROSS" trademark exceeds the minimum $2,500.00 felony threshold.  The standard 2X limitation is therefore inapplicable under TEX. CIV. PRAC. AND REM. CODE § 41.008(c)(11).

31.    Plaintiff seeks total damages specified in ¶¶ 29-30, *supra*, on Count VI.

## COUNT VII: TRESPASS TO REAL PROPERTY

32.    Plaintiff restates and incorporates by reference the foregoing.   Plaintiff also incorporates by reference the factual allegations in other counts, *infra*.

33.    During the course of his fraudulent federal trademark registration activity, Defendant Prado also maliciously and repeatedly trespassed upon Plaintiff's residential property with the intent to cause harm. *See, e.g.,* ¶ 23, *supra*.   Plaintiff requests $100.00 in compensatory damages plus $200.00 in additional damages to deter, etc. *See, e.g., State Farm*, 538 U.S. at 419.

## PRAYER

34.    Plaintiff asks the Court to enter the requested declaratory judgment and injunction.   Plaintiff also asks the Court to enter judgment of $133,151.11 against Defendant Prado, with post-judgment interest to accrue at the maximum rate allowed by law.

DATED: January 10, 2022

*/s/ William R. Howell, Jr.*
William R. Howell, Jr.
P.O. Box 471430
Fort Worth, TX 76147
(512) 426-9608
williamhowell@utexas.edu
NY5091269 (Admitted S.D. Tex.)
ATTORNEY FOR PLAINTIFF